UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:11-CR-050 JD |
| | ) | (Related Case No. 3:13-CV-327 JD) |
| ERIK SOLANO | ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Erik Solano's Motion to Vacate under 28 U.S.C. § 2255. [DE 39.] The Court previously appointed counsel for Mr. Solano [DE 41], received briefing, and held an evidentiary hearing regarding the timeliness of the petition [DE 58]. For the reasons stated below, the Court concludes that the petition was, in fact, untimely. The petition is therefore **DISMISSED**.

**I. Procedural History and Facts**

Mr. Solano was indicted in April 2011 on three counts related to cocaine distribution. He was represented throughout the proceedings in this Court by his retained attorney, Andre Gammage. Mr. Solano pled guilty to Counts 1 and 3 of the Indictment, with the benefit of a written plea agreement, after which the Probation Office completed a Presentence Report.

The Presentence Report calculated the drug quantity attributable to Mr. Solano based, in part, on an interview he had given to ATF agents. During the interview, Mr. Solano admitted to agents that he had taken approximately thirty trips to Chicago in order to purchase large amounts of marijuana (forty pounds each trip). Mr. Solano objected to the drug quantities contained in the Presentence Report; in the objection, he admitted that he had made those statements to agents, but claimed that he had been lying when he made the statements. Instead, Mr. Solano claimed that he had only taken one trip to Chicago and purchased 25 pounds of marijuana.

Mr. Solano was sentenced on October 21, 2011. During the course of the sentencing hearing, Mr. Solano testified in support of his objection to the presentence report. The Court concluded that Mr. Solano's testimony was not truthful, and so did not award him any reduction in his offense level for acceptance of responsibility. His offense level was also increased for obstruction of justice. Mr. Solano was sentenced to 168 months of imprisonment (at the low end of the advisory Guidelines range), to be followed by a term of supervised release of three years. Towards the end of the sentencing hearing, Mr. Solano was advised by the Court that he had waived his appeal rights as part of his plea agreement. Mr. Solano stated that he understood that waiver. The judgment was filed on October 26, 2011.

Mr. Solano claims to have told Mr. Gammage at the end of the sentencing hearing to file a notice of appeal, since Mr. Solano disagreed that he should have received any "extra time" based on his testimony at the sentencing hearing. Mr. Solano also claims that Mr. Gammage told him he would come see him at the St. Joseph County Jail in two weeks. Mr. Gammage did not visit Mr. Solano at the jail and no notice of appeal from the judgment was ever filed.

On November 1, 2011, Mr. Solano mailed a letter to Mr. Gammage from the St. Joseph County Jail. The letter expressed frustration with Mr. Gammage's past representation of Mr. Solano. The letter did not mention anything regarding a requested appeal, but portions of the letter are consistent with Mr. Solano's explanation of the events ("You also told me on 'sentencing' that you will be here to see me. . ."). In addition, Mr. Solano wrote that he would be hiring a new lawyer, filing a disciplinary complaint with the bar association regarding Mr.

Gammage's representation, and further accused Mr. Gammage of accepting drugs as retainers. The letter stated that Mr. Solano was "not expecting [Mr. Gammage] to write back."[1]

In early November 2011, Mr. Solano's father contacted other lawyers to take-over the representation of Mr. Solano. His father paid one such lawyer—Ronald Strojny of Cicero, Illinois—to review Mr. Solano's case. Mr. Solano learned from his father that Mr. Strojny contacted Mr. Gammage regarding the case. His father relayed to Mr. Solano that Mr. Strojny had said nothing could be done regarding an appeal because of Mr. Solano's appeal waiver in the plea agreement. Mr. Strojny never visited Mr. Solano, mailed anything to Mr. Solano, or spoke directly with Mr. Solano. Mr. Solano did attempt to contact Mr. Strojny by phone on one occasion, but did not reach him.

After Mr. Solano arrived at his designated institution in West Virginia in mid-December 2011, he began trying to contact Mr. Gammage by phone with the intent to ask about the status of his appeal. Mr. Solano estimated that he personally called Mr. Gammage's office about ten times, over the course of several months. Mr. Gammage's staff did not accept the phone calls from Mr. Solano. Mr. Solano's wife also called and visited Mr. Gammage's office "a number of times." No evidence was presented regarding the specific number of times his wife visited the office, but in each interaction with Mr. Gammage's staff she indicated only that her husband wanted to talk with Mr. Gammage without indicating why. Mr. Gammage's staff told her that Mr. Gammage was not there or unavailable each time she called or visited. Ultimately, Mr. Solano's wife was never able to speak with Mr. Gammage.

---

[1] At the evidentiary hearing, the government offered a November 9 letter from Mr. Gammage to Mr. Solano, which purports to respond to the November 1 letter. However, the letter is unsigned and there is currently no evidence that the letter was actually sent by Mr. Gammage or received by Mr. Solano. Accordingly, the Court affords no weight to the November 9 letter. The government provided no further evidence from Mr. Gammage.

Mr. Solano testified that he was "concerned" in December 2011, since he was not able to reach Mr. Gammage. However, he did not write any further letters to Mr. Gammage or make other specific inquiries. Mr. Solano also learned within approximately five or six months of arriving at his designated institution in December of 2011 of his ability to file a 2255 petition to allege ineffective assistance of counsel.

On January 11, 2013, Mr. Solano mailed a letter to the Court regarding the status of his case and appeal. In response, the clerk's office sent Mr. Solano a copy of his docket sheet, which showed that no appeal had been filed. After seeing that no appeal had been filed, Mr. Solano sent his wife to Mr. Gammage's office to ask for his case file. Mr. Gammage's assistant promptly sent the paperwork to Mr. Solano in West Virginia. Mr. Solano estimated that he received the package about a week after the file had been requested.

On February 5, 2011, Mr. Solano wrote a letter to the Court requesting blank 2255 forms, which were sent to him by the clerk's office. He deposited his 2255 petition in the mail on April 15, 2013. No filings (including any request for an extension of time to file the 2255 petition) were received between the February 5 letter and the 2255 petition.

## II. Discussion

Mr. Solano seeks to vacate his conviction under 28 U.S.C. § 2255, which permits a court to vacate a judgment where "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Specifically, Mr. Solano argues that he was denied his right to the effective assistance of counsel, as guaranteed by the Sixth Amendment, because Mr. Gammage failed to properly advise him regarding the sentencing impact of relevant conduct and the potential consequences of any challenge at sentencing to relevant conduct.

4

However, section 2255 contains a limitations period and in order to be eligible for relief a petitioner must timely file his petition. In this case, there are two distinct timeliness considerations. The first is when the one-year statute of limitations period should begin to run. Mr. Solano's petition was deposited in the mail on April 15, 2013. Therefore, if the clock began to run on April 15, 2012, or later, the petition is timely. If the clock began to run at some time before April 15, 2012, then there is a second question that must be addressed: whether at least some period of that time is excused by equitable tolling. *Ryan v. United States*, 657 F.3d 604, 607 (7th Cir. 2011) ("When a limitations period starts and whether it is later equitably tolled are two different questions."). The Court addresses each question in turn.

A. **Start of Limitations Period**

Section 2255 has a one-year statute of limitations, which begins to run from the latest of four events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Neither subsection (f)(2) nor (f)(3) are applicable in this case.

Mr. Solano's judgment was filed on October 26, 2011, and no direct appeal was taken. Therefore, for the purposes of subsection (f)(1), Mr. Solano's judgment became final when his

time to file a notice of appeal expired on November 9, 2011. *Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013) ("the sentence did not become final until the deadline for filing a notice of appeal expired").

Whether subsection (f)(4) applies, and when it would trigger the start of the limitations period, requires more discussion. That subsection starts the limitations period from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." The claims raised in Mr. Solano's petition are two-fold: (1) Mr. Gammage was ineffective in negotiating the plea agreement, since he failed to adequately advise Mr. Solano as to the scope of relevant conduct under the conspiracy count and (2) Mr. Gammage was ineffective at sentencing, since he objected to the relevant conduct which caused Mr. Solano to lose his acceptance of responsibility as well as gained him obstruction of justice.

One might question whether the cause of his enhanced Guidelines range was the objection to relevant conduct or Mr. Solano's perjurious testimony. In any event, the facts supporting these claims were, by his own admission, known to Mr. Solano at the time of his sentencing. Mr. Solano testified at the evidentiary hearing that he immediately thought (at the conclusion of the sentencing hearing) either what the Court or Mr. Gammage had done was wrong, and knew immediately that he had lost acceptance of responsibility and that his offense level had been increased for obstruction of justice. Additionally, Mr. Solano knew at the time of sentencing whether Mr. Gammage had advised him of the possible consequences of his testimony.

It should be noted that the failure to file the notice of appeal is not the basis of any claim in the petition and is argued only in support of equitable tolling. Therefore, whether or not a notice of appeal had been filed is not a "fact[] supporting the claim or claims presented" by Mr.

6

Solano. 28 U.S.C. § 2255(f)(4); *Gregory v. United States*, No. 3:08CV482-1-W, 2008 WL 4980397, at *1 n.3 (W.D.N.C. Nov. 24, 2008) ("Because Petitioner does not raise an ineffective assistance of counsel claim for failure to file a direct appeal in his Motion to Vacate, this Court has not analyzed his statute of limitation issue under §2255[(f)](4) as the discovery of his counsel's failure to file an appeal is not a fact supporting a claim asserted in the Motion to Vacate."). Instead, Mr. Solano's ineffective assistance claims rely only on the advice given to Mr. Solano during the plea negotiations and leading up to the sentencing hearing, the impact of which was known to him upon completion of sentencing. Accordingly, subsection (f)(4) does not delay the start of the limitations period on these claims.

Therefore, the limitations period began for Mr. Solano's two claims on November 9, 2011. Since his petition was filed more than a year after that date, he must benefit from equitable tolling or his petition is untimely.

### B. Equitable Tolling

The one-year statute of limitations for 2255 petitions is not jurisdictional, so the limitations period may be equitably tolled. *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). However, equitable tolling is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014); *see also Marcello*, 212 F.3d at 1010 ("the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha*, 763 F.3d at 683. The burden is on the petitioner for both points. *Id.*

Here, the Court finds that at least initially Mr. Solano did diligently pursue his rights. The Court assumes for the purposes of this analysis that Mr. Solano did, in fact, instruct Mr. Gammage to file a notice of appeal. After sending a letter to Mr. Gammage on November 1, 2011, presumably terminating his representation, Mr. Solano began calling Mr. Gammage about six weeks later when he arrived at his designated facility in West Virginia. Mr. Solano's wife also called and visited the office on several occasions.

Those actions may have initially been reasonably diligent. *See Ryan*, 657 F.3d at 607–08 ("a reasonable prisoner may take at least two months . . . to suspect that counsel has dropped the ball, contact counsel or the court, wait for a response, and verify the suspicion."). However, it should have been apparent to Mr. Solano quickly thereafter that other steps were necessary to determine the status of any appeal. Other facts were known to Mr. Solano during this time, which raised the need to inquire more deliberatively. During his sentencing hearing, this Court instructed Mr. Solano as to the waiver of his appeal rights, which Mr. Solano stated that he understood. So Mr. Solano should have understood his right of appeal was limited. More importantly, Mr. Solano knew that he had sent the November 1 letter to Mr. Gammage, which stated (among other things) that Mr. Solano would be hiring a new lawyer and filing a disciplinary complaint. Mr. Solano also knew that his father had retained Mr. Strojny, that Mr. Strojny had contacted Mr. Gammage, and that Mr. Strojny had advised Mr. Solano's father that nothing could be done because of the appeal waiver contained in the plea agreement. Under those circumstances, it should have been apparent to Mr. Solano that Mr. Gammage may not be taking any further action on his behalf.

When faced with these facts and a non-responsive counsel, a prisoner who was diligently pursuing his rights would have done more than Mr. Solano did in this case. Given the inability

to reach counsel by phone, a reasonably diligent prisoner would have attempted other means by which to determine the status of his appeal. He could have easily written a letter to Mr. Gammage explaining the reason for his inquiry, which Mr. Solano did not do.[2] Additionally, a letter to the Seventh Circuit or to this Court would have quickly uncovered that no appeal had been filed. *Montenegro v. United States*, 248 F.3d 585, 593 (7th Cir. 2001), overruled on other grounds by *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001) ("That an appeal had not been filed was a matter of public record, 'which reasonable diligence could have unearthed.'"). Mr. Solano did not write such a letter until January 2013. The Court believes that a reasonably diligent prisoner would have done so sooner and, based on the facts presented here, within at least two months after initiating calls to Mr. Gammage. Additionally, once Mr. Solano did have the 2255 forms and his case file, he made no attempt to seek any kind of extension of time or seek additional time in the law library to quickly complete his petition. *See Socha*, 763 F.3d at 687.

So under the facts presented here, the Court finds that Mr. Solano did diligently pursue his rights until mid-February 2014. The Court notes that even if Mr. Solano could prove extraordinary circumstances prevented his filing and, thus, meet his burden to equitably toll at least some part of the limitations period, this would still leave him about two months short of the tolling needed to make his filing timely in this case.

However, there are no extraordinary circumstances in this case that prevented Mr. Solano from timely filing his 2255 petition. Findings of equitable tolling related to 2255 petitions are

---

[2] It appears that neither Mr. Solano nor his wife ever expressed to Mr. Gammage or his staff the reason for the attempts to contact Mr. Gammage. Mr. Solano's own calls were never accepted; Mr. Solano testified that his wife only attempted to get Mr. Gammage to answer Mr. Solano's phone calls, without disclosing the reason that Mr. Solano was calling. Had Mr. Gammage known that the attempted communications were to ascertain the status of an appeal, he may have responded in a timely manner, as he did when he was ultimately asked to provide the case file.

rare and the Seventh Circuit has identified a number of circumstances that do not constitute extraordinary circumstances (at least standing alone). *See Johnson v. Chandler,* 224 F. App'x 515, 519 (7th Cir. 2007) (collecting cases); *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2000) (neither attorney negligence nor attorney incapacity is a ground for equitable tolling); *Montenegro*, 248 F.3d at 593 (lack of response from attorney regarding pendency of direct appeal is not a ground for equitable tolling); *see also Muhammad v. United States*, 735 F.3d 812, 816 (8th Cir. 2013) (lack of response from attorney regarding filing of 2255 petition is not a ground for equitable tolling).

Mr. Solano argues that Mr. Gammage's failure to file a notice of appeal and Mr. Solano's delay in discovering that fact constitutes an extraordinary circumstance that supports equitable tolling in this case. [DE 50 at 2–3; DE 62 at 1–2.] Various courts have considered the effect of a counsel's failure to file a notice of appeal on the timeliness of a 2255 petition, but those discussions are most often in the context of when the limitations period should begin to run under 28 U.S.C. § 2255(f)(4). *See Ryan*, 657 F.3d at 607–08 (the determination of when a prisoner should have discovered the lack of an appeal is a fact-intensive inquiry; "at some point, the reasonably diligent prisoner will contact counsel, ask how the appeal is going, and either receive an honest response or infer from counsel's silence that something is amiss (and then follow up with the court)."); *Montenegro*, 248 F.3d at 593; *Wims v. United States*, 225 F.3d 186, 191 (2d Cir. 2000) ("the five-month delay between September 1997 and February 1998—one year before Wins sought habeas relief—is not so clearly unreasonable that it plainly appears from the face of appellant's petition and supporting papers that he is barred from habeas relief."); *Anjulo-Lopez v. United States*, 541 F.3d 814, 819 (8th Cir. 2008) (holding a reasonably diligent

10

person in the inmate's circumstances would have discovered within three to four months that no appeal had been filed).

Those cases that addressed the issue universally rejected the notion that a petitioner's delay in learning of the absence of an appeal is an extraordinary circumstance justifying equitable tolling. *Montenegro*, 248 F.3d at 593 ("[Petitioner] argues that the barriers he faced in learning that his appeal had not been filed constitute extraordinary circumstances . . . . [Petitioner's] circumstances do not rise to this level."); *see also Muhammad*, 735 F.3d at 816 (addressing attorney non-responsiveness as to the filing of a 2255 petition; "We do not condone attorneys failing to respond to letters or phone calls; however, in this case, [the attorney's] actions do not constitute an 'extraordinary circumstance' that prevented [the petitioner] from timely filing his section 2255 motion").

By comparison, in one recent case—*Socha v. Boughton*—the Seventh Circuit did find extraordinary circumstances present in a case involving an otherwise untimely habeas petition. 763 F.3d 674 (7th Cir. 2014). That case had many unique circumstances compared to the average request for equitable tolling. The petitioner had made repeated requests to his former counsel to send the petitioner's case file, which was necessary to develop his ineffective assistance and *Brady* arguments; he also made attempts to get alternate counsel. However, even despite repeated requests to turn over the petitioner's file, his former counsel either did not respond or did not comply with the request. Eventually, the petitioner received the file through the intervention of the attorney's supervisor. The Seventh Circuit distinguished these facts from "garden variety neglect of a client" and found that this was "a rarer instance where the materials necessary to conducting one's legal affairs were being unjustifiably held by a person who had no ability to use them." *Id.* at 686. When the petitioner did receive the file, he was in segregation

with substantially limited access to the law library. Finally, the petitioner did file a request to extend the deadline to file within the time to file his petition and a district judge granted the extension (although a later district judge disagreed with the decision to grant the extension). In all, the Seventh Circuit found that the petitioner in *Socha* faced "nearly insurmountable" hurdles. *Id.*

Mr. Gammage's actions fall far short of the extraordinary circumstances the Seventh Circuit found warranted equitable tolling in *Socha*. Here, Mr. Solano made a series of phone calls to Mr. Gammage (approximately ten over the course of many months, though the calls were not accepted by his office and no reason for the call was communicated) and his wife similarly called and visited the office. At most, Mr. Gammage's misconduct was failing to accept or respond to those calls.

The Court finds that Mr. Gammage's conduct neither rises to the same level as the attorney's conduct in *Socha* nor otherwise presents an extraordinary circumstance that prevented Mr. Solano from filing a timely petition. In *Socha*, the attorney had absolutely no basis to fail to return the client's file and Socha had no other alternative by which to obtain the information he needed to file his 2255. Here, Mr. Gammage may well have had legitimate grounds for failing to return the phone calls. The November 1 letter, in which Mr. Solano stated he was filing a disciplinary complaint and hiring a new lawyer, can easily be read to state that he was firing Mr. Gammage. Any belief by Mr. Gammage that he had been terminated would be further supported by later contact from Mr. Strojny, who Mr. Solano's father had retained to at least consult on the matter.[3] Moreover, there is no evidence to suggest that Mr. Gammage had any idea about the

---

[3] Additionally, assuming that Mr. Solano instructed Mr. Gammage to file a notice of appeal, Mr. Gammage may have mistakenly believed that the November 1 letter relieved him of any duty to file an appeal on Mr. Solano's behalf.

12

reasons for Mr. Solano's calls. And most notably, Mr. Gammage's office turned the file over to Mr. Solano promptly upon request.

Instead, the facts in this case are more comparable to those presented in *Montenegro* and *Muhammad*. Like in *Montenegro*, whether or not an appeal was pending was available in the public record; additionally, Mr. Gammage was never explicitly asked about the status of any appeal, either in the November 1 letter or in the calls and visits to his office (in which no purpose was specified). *Montenegro*, 248 F.3d at 589. Like in *Muhammad*, there was no burden on Mr. Solano other than the inability to reach counsel and nothing stood in the way of him using alternate means to monitor the status of his case. *Muhammad*, 735 F.3d at 816. Even if what Mr. Gammage had done was improper, under these circumstances the Court finds it to be a "garden variety" error, which does not warrant equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Considering the record as a whole and the cumulative effects on Mr. Solano's ability to file his 2255 petition, the Court finds that Mr. Solano has not met his burden of proving that there were extraordinary circumstances that prevented the timely filing of his petition. At best, Mr. Solano may not have realized that the time was approaching in which he needed to file his petition, even though he acknowledged in his own testimony at the evidentiary hearing he was aware early on about his ability to file a petition. But that is not sufficient. *Robinson v. United States*, 416 F.3d 645, 650 n.1 (7th Cir. 2005) ("a mistaken understanding about the deadline for filing is not grounds for equitable tolling.").

For these reasons, the Court finds that equitable tolling is not appropriate in this case. Mr. Solano has not shown that an extraordinary circumstance beyond his control prevented timely filing. And with respect to diligent pursuit of his rights, his initial diligence was for an

insufficient period of time to make the filing timely.  In any event, diligence alone is not enough to support a request for equitable tolling.  Accordingly, there is not a sufficient basis to equitably toll the statute of limitations for Mr. Solano's petition and the petition is untimely.  In light of the Court's holding on the timeliness of the petition, the Court need neither address nor receive evidence on the merits of Mr. Solano's contentions of ineffective assistance or whether the petition is barred by the waiver contained in his plea agreement.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008) (noting that "[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal") (citing *Anderson v. Litscher*, 281 F.3d 672 (7th Cir. 2002)).

Here, no additional argument is needed.  The Court does not believe that reasonable jurists could debate the correctness of the procedural ruling that Mr. Solano filed his 2255

petition after the statute of limitations had expired. Additionally, the Court believes its assessment of whether the statute of limitations should have been equitably tolled is not debatable among reasonable jurists because the circumstances in this case do not justify equitable tolling. As a result, the Court declines to issue the Defendant a certificate of appealability.

The Court advises Mr. Solano (and counsel) that, pursuant to Rule 22(b) of the Rules of Appellate Procedure, he may request that a circuit judge issue the certificate of appealability. That request must be made within sixty days of this order. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) ("the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision.").

### V. Conclusion

For the reasons stated above, the Court finds the petition untimely. Accordingly, it must be **DISMISSED**.

SO ORDERED.

ENTERED: December 16, 2014

/s/ JON E. DEGUILIO
Judge
United States District Court